**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OKLAHOMA**

| | | |
|---|---|---|
| **TIMOTHY BRIAN BUSSELL,** | ) | |
| | ) | |
| **Petitioner,** | ) | |
| | ) | |
| **v.** | ) | **Case No. 20-CV-0417-TCK-JFJ** |
| | ) | |
| **STEVEN HARPE, Director,** | ) | |
| **Oklahoma Department of Corrections,[1]** | ) | |
| | ) | |
| **Respondent.** | ) | |

## <u>OPINION AND ORDER</u>

Petitioner Timothy Brian Bussell, an Oklahoma prisoner appearing through counsel, brings this action pursuant to 28 U.S.C. § 2254, seeking federal habeas relief from the judgment entered against him in the District Court of Tulsa County, Case No. CF-2015-4151. Dkts. 2, 13. Respondent Steven Harpe filed a response in opposition to the petition (Dkt. 16) and submitted the state-court record (Dkts. 17, 18), and Bussell filed a reply (Dkt. 19). Having considered the parties' arguments, the relevant record, and applicable law, the Court denies the petition.

I.   BACKGROUND

This matter arises from the 2014 rape of T.M., an adult female, at Bussell's apartment in Tulsa, Oklahoma. The State's case at trial included the following testimony and evidence. Bussell shared an apartment with Cody Alexander, whom T.M. had recently begun dating. Dkt. 17-5, at

---

[1] Bussell presently is incarcerated at the Lawton Correctional Facility (LCF), a private facility in Lawton, Oklahoma. The Oklahoma Department of Corrections has custody of inmates housed in private prisons. Okla. Stat. tit. 57, § 561(A). The Court therefore substitutes Steven Harpe, Director, Oklahoma Department of Corrections, in the place of Mark Bowen, as party respondent. *See* Brian R. Means, *Federal Habeas Manual* § 1:94 (2023); Rule 2(a), *Rules Governing Section 2254 Cases in the United States District Courts*.

63-65.[2]  On April 7, 2014, Alexander and Bussell drove to T.M.'s home in Muskogee, Oklahoma, and the three returned to Alexander and Bussell's apartment in Tulsa with plans to "hang out." *Id.* at 64-66.  On the return trip, Alexander told T.M. that he wanted her to have sex with Bussell. *Id.* at 66.  T.M. testified that she "did not say yes and [she] did not say no" to Alexander's request. *Id.*  Alexander then mentioned the possibility of T.M. having sex with his friend Willie Donnell Jackson. *Id.* at 4, 66-67.  T.M. testified that she "told [Alexander] flat out no" and that she did not agree to have sex with Jackson. *Id.* at 66-67.  Once at the apartment, T.M. drank several shots of tequila and had consensual sex with Alexander. *Id.* at 67-69.  Afterward, Bussell came into the room with a shot glass and told T.M. to drink it. *Id.* at 70.  Bussell then "[got] on top of [T.M.]" and began having sex with her. *Id.*  T.M. testified that she did not agree to have sex with Bussell, that she "mumbled something," and that everything then "went black." *Id.* at 70-71.  Later, T.M. woke up, saw Alexander lying next to her, walked to the kitchen to get a drink, saw Bussell lying on the couch in the living room, returned to Alexander's bedroom, performed fellatio on Alexander, and went back to sleep. *Id.* at 71-72.

Sometime thereafter, Jackson sent a text message to a co-worker and attached videos and photographs that the co-worker described at trial as depicting "a lady unconscious laying naked and  . . . being taken advantage of."  Dkt. 17-5, at 44-49; Dkt. 18 (State's Exhibits 1, 2, 3).  The co-worker further testified that one photograph (State's Exhibit 3) depicted Alexander, Jackson, and "the young lady," and that the other photograph (State's Exhibit 2) depicted Alexander,

---

[2] Unless otherwise noted, the Court's citations refer to the CM/ECF header pagination.

Jackson, a third male he did not know, and the same female.[3]  *Id.* at 49-50.  The co-worker testified

he also recognized Alexander and Jackson as the two males in the videos.  *Id.* at 50-51.  The co-

worker reported his receipt of the videos and photographs to his boss and later turned his phone

over to law enforcement officers for examination.  *Id.* at 47; Dkt. 17-8, at 33-34.  Bussell admitted

to police that he used Jackson's phone to film the videos.  *Id.* at 34; Dkt. 17-5, at 139-42, 185.  The

videos appear to capture Bussell's laughter and voice in the background telling Jackson to "perk

it up," as well as Bussell's hand lifting T.M. to a sitting position while Jackson ejaculates on her

chest.  Dkt. 17-5, at 219-20; Dkt. 17-6, at 37-40; Dkt. 18 (State's Exhibit 1).  T.M. testified that

she initially lied and told police that "everything was consensual" because Alexander told her to

say that.  Dkt. 17-5, at 74, 104-24.  T.M. further testified that after she saw the video, she told

police that she did not consent to have sex with Jackson and that she did not consent to the creation

of the video.  *Id.* at 104-24.

Bussell and Jackson were charged and tried jointly for first-degree rape accomplished when

the victim is unconscious, a violation of Okla. Stat. tit. 21, § 1114(A)(4).[4]  Dkt. 17-8, at 101.  At

trial, the jury was instructed that an individual who aids and abets in the commission of a crime is

a principal to the crime and is equally guilty, while an individual who merely stands by and does

not participate is not a principal.  Dkt. 17-6, at 12; Dkt. 17-8, at 145-46.  The jury found both

defendants guilty, and the trial court sentenced each to life imprisonment.  Dkt. 17-10, at 16, 20.

Bussell directly appealed his conviction and sentence to the Oklahoma Court of Criminal Appeals

---

[3] In closing argument, the prosecutor described State's Exhibits 2 and 3 as "photos that they took posing over [T.M.'s] unconscious body" depicting T.M. "facedown on the bed" while "Jackson is giving the thumbs up" and Bussell and Alexander "are smiling like big game hunters that just bagged a trophy."  Dkt. 17-6, at 8.

[4] Alexander was charged jointly with Bussell and Jackson but pleaded guilty to the charge before trial in exchange for a six-year suspended sentence.  Dkt. 17-8, at 86, 101.

(OCCA), asserting ten claims.  Dkt. 16-1, at 1-6.  In an unpublished summary opinion filed May 23, 2019, the OCCA rejected each claim on the merits and affirmed Bussell's conviction and sentence.  Dkt. 16-4.

Bussell now seeks federal habeas relief, under 28 U.S.C. § 2254, reasserting five of the ten claims he presented to the OCCA on direct appeal.  Dkts. 2, 13.  Bussell specifically claims (1) he was denied due process because the charging document was too vague to provide adequate notice of the charges against him; (2) he was denied due process because the State's evidence is insufficient to prove his guilt beyond a reasonable doubt; (3) he was denied due process because the trial court refused to sever his trial from Jackson's trial; (4) he was denied his Sixth Amendment right to the effective assistance of trial counsel; and (5) he was denied due process because the prosecutor made prejudicial and improper remarks during closing argument.  Dkt. 13.

## II.   LEGAL STANDARDS

As just discussed, the OCCA rejected each of Bussell's claims on the merits when he presented them on direct appeal.  The Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA) "imposes a highly deferential standard for evaluating state-court rulings and demands that state-court decisions be given the benefit of the doubt."  *Renico v. Lett*, 559 U.S. 766, 773 (2010) (internal citations and quotation marks omitted).  When, as here, a federal claim has been "adjudicated on the merits in State court proceedings," the AEDPA permits a federal court to grant habeas relief only if the state-court decision as to that claim "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."  28 U.S.C. § 2254(d)(1), (2).

Clearly established federal law "refers to the holdings, as opposed to the dicta, of the

4

[Supreme] Court's decisions as of the time of the relevant state-court decision." *Dodd v. Trammell*, 753 F.3d 971, 982 (10th Cir. 2013) (alteration and internal quotation marks omitted).  A state-court decision is "contrary to" clearly established federal law if the conclusion is "opposite to that reached by the Supreme Court on a question of law or if the state court decides a case differently than the Court has on a set of materially indistinguishable facts."  *Id.* (alterations and internal quotation marks omitted).  A state-court decision is an "unreasonable application" of clearly established federal law if the "state court identifies the correct governing legal principle from the [Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id.* (alteration and internal quotation marks omitted).  "[A]n *unreasonable* application of federal law is different from an *incorrect* application of federal law.  Indeed, a federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." *Renico*, 559 U.S. at 773 (citations and internal quotation marks omitted).  Instead, "[a]s a condition for obtaining habeas corpus relief from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Harrington v. Richter*, 562 U.S. 86, 103 (2011).

Applying these standards, the Court turns to Bussell's claims.

III.   DISCUSSION

A.   Claim One: Inadequate Notice of Charge

Bussell first contends that he was denied due process because the Amended Information gave "inadequate notice of the charge against which he had to defend."  Dkt. 13, at 13-14.  Under clearly established federal law, a charging document "is sufficient if it, first, contains the elements

of the offense charged and fairly informs a defendant of the charge against which he must defend, and, second, enables him to plead an acquittal or conviction in bar of future prosecutions for the same offense." *Hamling v. United States*, 418 U.S. 87, 117 (1974); *Russell v. United States*, 369 U.S. 749, 763-64 (1962).   Bussell argues that the Amended Information charged him with committing rape by having intercourse with T.M. while she was unconscious and thus did not accurately reflect the State's theory of prosecution presented at trial, namely, that Bussell aided and abetted Jackson's rape of T.M.  Dkt. 13, at 13.  The Amended Information states:

> **CODY ALEXANDER, WILLIE DONNELL JACKSON AND TIMOTHY BRIAN BUSSELL**, on or about **4/7/2014**, in Tulsa County, State of Oklahoma and within the jurisdiction of this Court, did commit the crime of **RAPE – FIRST DEGREE – VICTIM UNCONSCIOUS**, a Felony, by unlawfully, feloniously, willfully and knowingly, while acting in concert each with the other, have sexual intercourse with T.M. while she was unconscious and this fact was known to all defendants.

Dkt. 17-8, at 101.  Bussell challenged the sufficiency of the charging document on direct appeal, and the OCCA rejected that challenge, reasoning:

> "The information need not specifically allege that the defendant aided and abetted the offense.  Additional facts need not be alleged beyond those required to charge the crime against the one aided and abetted." *Rounds v. State*, 1984 OK CR 49, ¶ 20, 679 P.2d 283, 287 (internal citations omitted).  *See* 22 O.S.2011, § 432.  In the present case, the State nonetheless specifically alleged that Bussell acted "in concert" with his co-defendants to unlawfully, feloniously, willfully and knowingly have sexual intercourse with the unconscious victim.  Bussell's complaint that he was not charged exclusively as an aider and abettor, consistent with the State's theory at trial, clearly fails.

> It cannot be said on the record before this Court that Bussell was misled by the amended Information or that conviction under it would expose him to the possibility of being put in jeopardy a second time for the same offense.  *See Miles v. State*, 1996 OK CR 24, ¶ 4, 922 P.2d 629, 630; *Sims v. State*, 1988 OK CR 193, ¶ 10, 762 P.2d 270, 272.  The real issue here is notice and it is clear Bussell had notice of both the evidence and the State's theory of the case well before trial and what he would be required to defend against.  There is no actual or obvious error and, thus, no plain error.  Proposition I is denied.

Dkt. 16-4, at 4-5.

Bussell appears to argue that the OCCA's decision is objectively unreasonable, though he does not specify whether he is asserting either (1) that the OCCA unreasonably applied clearly established federal law, (2) that the OCCA unreasonably determined the facts, or (3) both.

To the extent he argues the OCCA's decision involved an unreasonable application of the law, that argument fails because Bussell does not identify any United States Supreme Court case clearly establishing that the Constitution requires a state to identify a specific theory of prosecution in the charging document.  The only Supreme Court decision Bussell cites to support his claim that the Amended Information did not satisfy constitutional due process standards is *Russell*.  Dkt. 13, at 12-15.  But the Supreme Court has cautioned that *Russell* "stand[s] for nothing more than the general proposition that a defendant must have adequate notice of the charges against him" and that lower courts should not construe this "abstract" proposition as stating a more "specific rule," particularly a more specific rule that "a prosecutor's focus on one theory of liability at trial can render earlier notice of another theory of liability inadequate."  *Lopez v. Smith*, 574 U.S. 1, 5-6 (2014).

In *Lopez*, the prosecutor charged the defendant with first-degree murder and alleged that the defendant killed his wife and staged the scene to look like a burglary that resulted in a homicide. *Id.* at 2-3.  At the close of evidence, the prosecutor asked for an aiding-and-abetting instruction, likely because the defendant argued at trial that he could not have wielded the heavy murder weapon given that he had surgery a few weeks before the murder and suggested that one of his former employees committed the crime to obtain money owed to him by the defendant.  *Id.* at 3. Like the OCCA in this case, the state appellate court in *Lopez* rejected the defendant's argument "that he had inadequate notice of the possibility of conviction on an aiding-and-abetting theory" and further held that even if the charging document should have been more specific, "the evidence

presented at [the defendant's] preliminary examination provided" constitutionally sufficient notice to the defendant. *Id.* at 4. The federal district court considering the *Lopez* defendant's claim granted habeas relief, and the United States Court of Appeals for the Ninth Circuit affirmed the grant of habeas relief, but the Supreme Court reversed the Ninth Circuit's decision. *Id.* at 4-9. The *Lopez* Court reasoned, in part, that "[t]he Ninth Circuit did not purport to identify any case in which [the Supreme Court] ha[s] found notice constitutionally inadequate because, although the defendant was initially adequately apprised of the offense against him, the prosecutor focused at trial on one potential theory of liability at the expense of another." *Id.* at 5. The *Lopez* Court also reasoned that the Ninth Circuit erroneously relied on *Russell*'s general proposition regarding constitutionally adequate notice to formulate a more specific rule, never announced by the Supreme Court, "that a defendant is entitled to notice of the possibility of conviction on an aiding-and-abetting theory." *Id.* at 5-6; *see also id.* at 6 ("None of our decisions that the Ninth Circuit cited addresses, even remotely, the specific question presented by this case."). In short, *Lopez* establishes that *Russell* is not clearly established federal law supporting the specific rule that Bussell needs to advance his claim.

Instead, the clearly established federal law governing Bussell's claim is the general rule articulated in *Russell* and reiterated in in *Hamling*: a charging document "is sufficient if it, first, contains the elements of the offense charged and fairly informs a defendant of the charge against which he must defend, and, second, enables him to plead an acquittal or conviction in bar of future prosecutions for the same offense." *Hamling*, 418 U.S. at 117; *see Russell*, 369 U.S. at 763-64. And Bussell does not argue, much less show, that the OCCA unreasonably applied this general rule when it evaluated his claim. *See Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004) ("[E]valuating whether a rule application was unreasonable requires considering the rule's

specificity.  The more general the rule, the more leeway courts have in reaching outcomes in case-by-case determinations.").  As noted by the OCCA, Oklahoma law expressly prescribes that an "information need not specifically allege that the defendant aided and abetted the offense" and, in any event, the State charged Bussell with "acting in concert" with his co-defendants, thereby providing him notice in the charging document that the State may prosecute him on a theory of aiding and abetting.  Dkt. 16-4, at 4 (citing *Rounds v. State*, 679 P.2d 283 (Okla. Crim. App. 1984) and Okla. Stat. tit. 22, § 432); *see Smith v. Lopez*, 731 F.3d 859, 868 (9th Cir. 2013) (holding that the information charging the defendant with first-degree murder was "sufficient to put him on notice that he could be convicted either as a principal or as an aider-and-abettor" because, under state law, "aiding and abetting a crime is the same substantive offense as perpetrating the crime, so aiders and abettors may be punished as principals"), *rev'd on other grounds*, 574 U.S. 1 (2014).

To the extent Bussell argues the OCCA unreasonably determined the facts, he does not identify any material facts that the OCCA either misstated or misapprehended.  And the record supports the OCCA's decision that Bussell had actual notice of the State's theory before trial.  Dkt. 16-4, at 4-5.  The probable cause affidavit supporting his arrest specifically relies on the aiding-and-abetting theory.  Dkt. 17-8, at 33-34.  And the state district court found probable cause against Bussell at the preliminary hearing based on this theory.  Specifically, the state district court noted that there was conflicting testimony regarding whether Bussell had consensual sex with T.M. but that "the reasonable finder of fact could conclude that he aided and abetted the rape charge as it is filed."  Dkt. 17-1, at 49-50; *see Sallahdin v. Gibson*, 275 F.3d 1211, 1227 (10th Cir. 2002) (considering "material available at the preliminary hearing and through discovery," along with the charging document, to conclude defendant received sufficient notice of charge).

Based on the foregoing, the Court finds that § 2254(d) bars relief and thus denies the

petition as to claim one.

B. Claim Two: Sufficiency of the Evidence

Next, Bussell contends he was denied due process because the evidence presented at trial is not sufficient to establish his guilt beyond a reasonable doubt.  Bussell argues the evidence presented at trial showed (1) that he "was merely a bystander to the crime of Jackson having unlawful intercourse with T.M. while she was unconscious" and (2) that Bussell filmed that crime, but (3) did not show that he assisted, encouraged, or otherwise aided Jackson in committing that crime.  Dkt. 13, at 16-17.  When an appellate court reviews a due process claim challenging the sufficiency of the evidence supporting a state criminal conviction, "the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979).  Applying *Jackson*, the OCCA rejected Bussell's claim, stating:

> Taken in the light most favorable to the State, sufficient evidence was presented at trial to allow any rational trier of fact to find Bussell guilty beyond a reasonable doubt of first degree rape as alleged in this case.  *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789, 61 L. Ed. 2d 560 (1979); *Davis v. State*, 2011 OK CR 29, ¶ 74, 268 P.3d 86, 111; *Lockett v. State*, 2002 OK CR 30, ¶ 13, 53 P.3d 418, 423; *Glossip v. State*, 2007 OK CR 12, ¶ 39, 157 P.3d 143, 151; 21 O.S.2011, § 1114(A)(4).  Bussell did more than just film this spectacle.  The jury could reasonably infer based upon the video itself that Bussell lent direction, support and encouragement to co-defendant Jackson's sexual intercourse with the unconscious victim.  Thus, the evidence allowed the jury to infer Bussell was more than a mere bystander.  Sufficient evidence was presented at trial to support Bussell's conviction for first degree rape as an aider and abettor to its commission by Jackson. Proposition II is denied.

Dkt. 16-4, at 5-6.

"Under *Jackson*, federal courts must look to state law for 'the substantive elements of the criminal offense,' but the minimum amount of evidence that the Due Process Clause requires to

prove the offense is purely a matter of federal law." *Coleman v. Johnson*, 566 U.S. 650, 655 (2012)

(internal citation omitted) (quoting *Jackson*, 443 U.S. at 324, n.16).   Nonetheless, a state court's

decision that the evidence satisfied the Due Process Clause is entitled to deference.   As the *Johnson*

Court explained,

> *Jackson* claims face a high bar in federal habeas proceedings because they are
> subject to two layers of judicial deference.   First, on direct appeal, "it is the
> responsibility of the jury—not the court—to decide what conclusions should be
> drawn from evidence admitted at trial.   A reviewing court may set aside the jury's
> verdict on the ground of insufficient evidence only if no rational trier of fact could
> have agreed with the jury."   *Cavazos v. Smith*, 565 U.S. 1, 2, 132 S. Ct. 2, 4, 181
> L.Ed.2d 311 (2011) (*per curiam*).   And second, on habeas review, "a federal court
> may not overturn a state court decision rejecting a sufficiency of the evidence
> challenge simply because the federal court disagrees with the state court.   The
> federal court instead may do so only if the state court decision was 'objectively
> unreasonable.'"   *Ibid.* (quoting *Renico v. Lett*, 559 U.S. 766, 773, 130 S. Ct. 1855,
> 1862, 176 L.Ed.2d 678 (2010)).

*Johnson*, 566 U.S. at 651.

Viewing the OCCA's decision with the requisite deference, the Court finds that decision

is objectively reasonable.   Bussell was convicted under Okla. Stat. tit. 21, § 1114(A)(4), which

criminalizes "[r]ape accomplished where the victim is at the time unconscious of the nature of the

act and this fact is known to the accused."   Okla. Stat. tit. 21, § 1114(A)(4); Dkt. 17-8, at 151.   To

be convicted of this crime under a theory of aiding and abetting, the defendant must have "aid[ed],

promote[d], or encourage[d] the commission of a crime by another person, either by act or counsel

or both," and must have acted "with criminal intent or with knowledge of the other person's intent."

Okla. Unif. Jury Instr. CR 2-6.   "Merely standing by, even if standing by with knowledge

concerning the commission of a crime, does not make a person a principal to a crime."   *Id.*; Dkt.

17-8, at 146.

Bussell appears to argue that the OCCA unreasonably applied the *Jackson* standard to the

facts of this case.   Dkt. 13, at 16-17.   But Bussell's argument does not acknowledge, much less

confront, the difficulty that a state-court defendant encounters in seeking federal habeas relief on a *Jackson* claim that has been rejected in state court. Rather, he appears to encourage this Court to simply review the claim de novo and reach a conclusion opposite to that reached by the OCCA. De novo review of this claim is not appropriate unless Bussell makes the threshold showings required by § 2254(d). And, on the record presented, he cannot make those showings. Bussell admitted that he filmed the videos of Jackson raping T.M. while she was unconscious. Dkt. 17-5, at 185. The videos depict Bussell—i.e., the voice of the male holding the camera—laughing, telling Jackson to "perk it up," and assisting Jackson in the rape by physically moving T.M.'s body. Dkt. 18 (State's Exhibit 1); Dkt. 17-5, at 219-20. A photograph presented to the jury depicts Bussell smiling and posing with Jackson, Alexander, and T.M. while T.M. is naked and unconscious. Dkt. 18 (State's Exhibit 2); Dkt. 17-5, at 5-6. As the OCCA reasoned, rational triers of fact could have found from this evidence that Bussell was not a mere bystander to the crime and that he actively participated in its commission through aid and encouragement.

The Court thus finds that § 2254(d) bars relief and denies the petition as to claim two.

C. Claim Three: Denial of Motion to Sever Trial

Next, Bussell argues that the trial court deprived him of due process by refusing to sever his trial from Jackson's. Dkt. 13, at 18-20. "Whether the trial court erred in denying severance is generally a question of state law that is not cognizable on federal habeas [review], for a criminal defendant has no constitutional right to severance unless there is a strong showing of prejudice caused by the joint trial." *Cummings v. Evans*, 161 F.3d 610, 619 (10th Cir. 1998) (internal citations omitted); *see, e.g.*, *Zafiro v. United States*, 506 U.S. 534, 538-39 (1993) (declining to adopt a bright-line rule "mandating severance whenever codefendants have conflicting defenses," discussing circumstances that might support a showing of prejudice sufficient to warrant

severance, and noting that trial courts have "sound discretion" to provide relief short of severance depending on the circumstances of the case).

The OCCA reviewed this claim on direct appeal and determined that the trial court did not abuse its discretion when it denied Bussell motion for severance.  The OCCA reasoned:

> This is not a case where one defendant sought to inculpate the other in an effort at exoneration.  Rather, the record shows both defendants pursued the common defense of attacking the victim with her prior inconsistent statements and the nature of her allegations in an attempt to characterize the entire affair between her and the defendants as consensual.

> "The issue is neither whether defendants disagree about facts nor whether one defendant claims the other should bear greater responsibility.  Conflicting defenses or cases in which both defendants admit to presence and some participation in the crimes do not require severance[.]"  *Fowler v. State*, 1994 OK CR 27, ¶ 4 n.2, 873 P.2d 1053, 1055 n.2.  In the present case, Bussell admitted to filming the video featuring Jackson having sex with the unconscious victim.  The defenses presented were remarkably united in their attempts to secure an acquittal by attacking the victim's credibility.  Severance was unwarranted based on this record.  Proposition VI is denied.

Dkt. 16-4, at 10.

Bussell appears to argue that the OCCA unreasonably applied *Zafiro* when it determined that he did not demonstrate a denial of his right to due process.  Dkt. 13, at 18-20.  Specifically, he argues that being tried alongside Jackson was prejudicial because (1) "his defense was different than Jackson's" given that T.M. initially told police she had consensual sex with Bussell; (2) "the video showed overwhelming guilt by Jackson," whereas the evidence showed that Bussell "was merely present and never assaulted T.M. while she was unconscious"; and (3) "the prosecutor injected race into the trial when it otherwise would not have been an issue for Bussell" by introducing evidence that T.M. was not attracted to black men because she had been raped by a black man when she was twelve years old and that the introduction of this evidence had a "spillover effect."  Dkt. 13, at 18-20.

But the *Zafiro* Court "expressed a preference for joinder," *Wilson v. Sirmons*, 536 F.3d 1064, 1099 (10th Cir. 2008), declined to adopt a *per se* rule requiring severance when defendants present "mutually antagonistic" defenses, and noted that even when there is a risk for prejudice arising from a joint trial of codefendants, a trial court generally can reduce that risk by taking steps short of severing the trial, *Zafiro*, 506 U.S. at 537-39.   For three reasons, Bussell has not shown that the OCCA's decision involved an unreasonable application of *Zafiro*.   First, as the OCCA reasoned, the defendants' defenses were aligned in their attack on T.M.'s credibility.   Like Bussell, Jackson advanced the theory that T.M. consented to sexual intercourse with him.   Dkt. 17-6, at 27. Bussell does not explain how such a defense could be prejudicial or antagonistic to his own.   To the contrary, if the jury accepted a defense exonerating Jackson of rape, this would serve to exculpate Bussell from the theory that he aided and abetted a rape.   Second, the record belies his assertion that the jury was prejudiced against him by "overwhelming" evidence of Jackson's guilt. Bussell asserts, "Jackson's culpability likely appears obvious to a juror viewing the [video], but Bussell was in a different position."   Dkt. 13, at 19.   True enough, Bussell was in a different position than Jackson while they acted in concert to commit the rape.   Unlike Jackson, who was in front of the camera raping T.M. while she was unconscious, Bussell was behind the camera filming the rape, offering words of encouragement, and assisting Jackson in moving T.M.'s body.   Dkt. 18 (State's Exhibit 1).   But this does not mean that Jackson and Bussell were in different legal positions because, under Oklahoma law, an aider and abettor can be held liable as a principal. And, as previously discussed, the record simply does not support Bussell's view assertion that he was merely a bystander who happened upon the rape by chance and began filming it.   *See supra* section III.B.   Thus, he has not shown that there was a risk of prejudice based on "markedly different degrees of culpability."   *Zafiro*, 506 U.S. at 539.   Third, Bussell does not present anything

more than speculation that he was prejudiced by the inclusion of racial matters related to Jackson. More importantly, the state district court sufficiently cured any risk of prejudice by instructing the jury that it must "give separate consideration to the case of each individual defendant," that "[e]ach defendant is entitled to have his case decided on the basis of the evidence and the law which is applicable to him," and the jury's verdict as to one defendant "should not, in any way, affect [its] verdict for the other defendant."  Dkt. 17-8, at 141; *see Zafiro*, 506 U.S. at 540-41 (noting that "juries are presumed to follow their instructions" and that the trial court "cure[d] any possibility of prejudice" arising from the denial of severance as to a trial of four defendants by reminding the jury of the Government's burden to prove each defendant's guilt beyond a reasonable doubt and of the jury's duty to separately consider whether the Government met that burden as to each defendant).

For these reasons, the Court finds that § 2254(d) bars relief and thus denies the petition as to claim three.

D.  Claim Four: Ineffective Assistance of Counsel

In his fourth claim for relief, Bussell contends trial counsel provided constitutionally deficient legal representation for eight reasons.  On direct review, courts analyze claims of ineffective assistance of counsel under the two-prong test established in *Strickland v. Washington*, 466 U.S. 668 (1984).  The petitioner must first demonstrate that counsel's performance was deficient, which requires a showing that the attorney's performance "fell below an objective standard of reasonableness." *Strickland*, 466 U.S. at 687-88.  The petitioner must then demonstrate that "the deficient performance prejudiced the defense." *Id.* at 687.  To establish prejudice, the petitioner must demonstrate a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694.  But, as in this case, "[w]hen

15

§ 2254(d) applies, the question is not whether counsel's actions were reasonable.  The question is whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard." *Richter*, 562 U.S. at 105; *see also id.* ("The standards created by *Strickland* and § 2254(d) are both 'highly deferential,' and when the two apply in tandem, review is 'doubly' so." (internal citations omitted)).

The OCCA analyzed Bussell's claim under *Strickland* and determined that Bussell had shown neither deficient performance nor prejudice.  Dkt. 16-4, at 11-12.  Applying double deference, the Court finds that the OCCA's rejection of the *Strickland* claim is objectively reasonable.  In his first two allegations, Bussell faults his trial counsel for failing to argue "that rape cannot be committed by a person who does not intervene" or who "merely stand[s] by and record[s] it."  Dkt. 13, at 22.  The jury was specifically instructed, however, that merely standing by and being present at the scene of a crime do not make a person a principal to the crime under an aiding-and-abetting theory.  Dkt. 17-8, at 146.  And Bussell's counsel expressly argued the applicability of this instruction in his closing argument.  *See* Dkt. 17-6, at 30 (referring to aiding-and-abetting instruction and asserting that the instruction "exonerated Mr. Bussell").  Trial counsel also argued the State did not present any evidence to "show that Mr. Bussell did anything to contribute to that video other than record it").  In his third allegation, Bussell faults his counsel for failing to move the State to "elect which alleged act of rape" it would rely upon for conviction. Dkt. 13, at 22.  Election under Oklahoma law is meant "to ensure that a jury's verdict is based on unanimous agreement by the jurors on the same criminal act or transaction."  Dkt. 16-4, at 8. Critically, Bussell argued on direct appeal that reversible error occurred because the State failed to elect its theory of the case, and the OCCA rejected that argument.  The OCCA found that Bussell "was charged with a single count of rape but more than one act of sexual intercourse was proven

at trial." *Id.*  But the OCCA concluded reversal was not required because

> the prosecutor effectively elected the sexual act upon which it was proceeding in the case by charging Bussell with raping the unconscious victim "while acting in concert each with the other" of his codefendants; advancing this factual theory of guilt during closing argument as the one upon which the State sought a conviction; and distinguishing during closing argument the victim's testimony concerning Bussell's earlier act of sexual intercourse with her when she blacked out as being "important" to support the charged offense.

*Id.* at 8-9.  The OCCA further reasoned that the jury instructions "were specifically directed towards [the sexual act depicted in the video] by repeating the charge contained within the amended Information and by fully instructing on the accomplice liability of aiders and abettors." *Id*. at 9.  On this record, it was objectively reasonable for the OCCA to conclude that trial counsel's failure to ask the trial court to require the State to elect its theory of prosecution, even if deficient, did not result in *Strickland* prejudice.

Bussell's fourth, fifth, and sixth allegations of ineffectiveness involve his counsel's failure to object to "variance[s] in evidence" and to T.M.'s competency as a witness.  Dkt. 13, at 22.  Yet, counsel is not deficient for failing to raise objections with no merit, and Bussell provides no argument suggesting that these objections would have been sustained.  More importantly, before rejecting his *Strickland* claim, the OCCA had already rejected Bussell's claims that an "improper variance in the evidence" required reversal and that T.M.'s "incredible and uncorroborated testimony" could not support his conviction.  *See* Dkt. 16-4, at 2 (identifying issues), 8-9 (rejecting variance-in-evidence argument in context of State's alleged failure to elect its theory of defense), 9 ("In the present case, the victim's testimony was corroborated by the video filmed by Bussell showing Jackson having sex with the obviously unconscious victim as well as the still photographs introduced into evidence.").  It was therefore entirely reasonable for the OCCA to conclude that, even if trial counsel should have raised the objections that Bussell identifies, trial counsel's failure to object did not result in prejudice.

17

In his seventh complaint, Bussell criticizes his counsel for failing to object to the prosecution's likening of the defendants to "big game hunters bagging a trophy" and "sexual predator[s]," and for comparing the case to the movie *The Accused*. Dkt. 13, at 22, 25. It would have been objectively unreasonable for the OCCA to find a Sixth Amendment violation regarding the failure to object to the allegedly improper movie comparison because Bussell's counsel did, in fact, object to the movie comparison, and the trial court overruled the objection on the basis that it was "argument." Dkt. 17-6, at 11. Conversely, it was objectively reasonable for the OCCA to conclude that trial counsel did not provide constitutionally deficient representation by failing to object to the other two comments given the "wide range of discussion and illustration" afforded counsel during closing arguments. *Bever v. State*, 467 P.3d 693, 705 (Okla. Crim. App. 2020) ("Regarding closing argument, this court has long allowed counsel . . . a wide range of discussion and illustration."). This is particularly true here given that the OCCA rejected Bussell's prosecutorial misconduct claim challenging as improper both comments and the movie comparison. *See* Dkt. 16-4, at 12-13 (finding the prosecutor's "trophy" and "predator" comments "amounted to reasonable comment on the evidence and was responsive to defense argument" and that the movie comparison "was mere argument that fell within the parameters of appropriate advocacy").

Finally, Bussell argues that his trial counsel should have "question[ed] police about Bussell's statement that when T.M. came out of the bedroom she told Bussell that it was 'his turn.' (O.R. 353)." Dkt. 13, at 22. This statement appears to have originated from an interview between Bussell and Detective Marnie Waller. Dkt. 17-9, at 182. At trial, Bussell's counsel questioned Detective Waller as to whether T.M. had reported during their interview that she had consented to sex with Bussell, and Detective Waller replied in the affirmative. Dkt. 17-5, at 147-48. In view

of this testimony, it was objectively reasonable for the OCCA to conclude that Bussell did not overcome the "strong presumption" under *Strickland* "that counsel's conduct falls within the wide range of reasonable professional assistance," and "that, under the circumstances, the challenged action 'might be considered sound trial strategy.'" *Strickland*, 466 U.S. at 689.

For these reasons, the Court concludes that § 2254(d) bars relief as to the *Strickland* claim and denies the petition as to claim four.

E.   Claim Five: Prosecutorial Misconduct

In his final claim for relief, Bussell contends that certain comments made by the prosecution "so infected the trial with unfairness as to make the resulting conviction a denial of due process." *Darden v. Wainwright*, 477 U.S. 168, 181 (1986) (internal quotation marks omitted); Dkt. 13, at 25-26.  "Inquiry into the fundamental fairness of a trial requires [courts] to examine the effect of any misconduct within the context of the entire proceedings." *Duckett v. Mullin*, 306 F.3d 982, 988 (10th Cir. 2002).  This requires courts to "look first at the strength of the evidence against the defendant and decide whether the prosecutor's statements plausibly could have tipped the scales in favor of the prosecution." *Id.* at 988-89 (internal quotation marks omitted).

Bussell objects to three comments made by the prosecution during closing arguments.  The first compared Bussell and Alexander to "big game hunters that just bagged a trophy."  Dkt. 17-6, at 8.  The second compared the case to the movie *The Accused*, in which a woman is raped while onlookers cheer.  *Id.* at 11.  The third referred to the defendants as sexual predators.  *Id.* at 41-42. As previously discussed, the OCCA rejected the prosecutorial misconduct claim.  Citing *Darden*, the OCCA found that the challenged comments did not deprive Bussell of due process:

> Taken in context, the prosecutor's challenged comments describing Bussell and his codefendants as sexual predators and likening them to "big game hunters that bagged a trophy" amounted to reasonable comment on the evidence and was responsive to defense argument.  The prosecutor's comparison of this case with the

19

movie "The Accused" was mere argument that fell within the parameters of appropriate advocacy.  Bussell was not deprived of a fundamentally fair trial in violation of due process from the challenged comments.  *Darden v. Wainwright*, 477 U.S. 168, 181, 106 S. Ct. 2464, 2471, 91 L. Ed. 2d 144 (1986); *Matricia v. State*, 1986 OK CR 152, ¶ 15, 726 P.2d 900, 904.  Proposition IX is denied.

Dkt. 16-4, at 12-13.

The facts relevant to this claim are undisputed, and Bussell provides no legal argument suggesting the OCCA unreasonably applied *Darden*.  Bussell states merely that the comments were improper because Bussell's "participation was as a bystander who did not assist or encourage the criminal activity."  Dkt. 13, at 26.  Ample evidence, however, was presented to the jury to support a finding that Bussell aided and encouraged Jackson in the commission of rape.  This evidence included Bussell's confession to filming the rape, the footage of a hand reaching from behind the video camera to hold T.M. up during the rape, and photographs of Bussell posing with Jackson, Alexander, and T.M. as she lay naked and unconscious.  Considering the prosecutor's challenged comments in the context of the entire trial, it is unlikely the challenged statements could have tipped the scales in favor of the prosecution.  Because it was objectively reasonable for the OCCA to reject the prosecutorial misconduct claim on the record presented, § 2254(d) bars relief and this Court denies the petition as to claim five.

IV.   CONCLUSION

Based on the foregoing, the Court denies Bussell's petition for a writ of habeas corpus (Dkt. 2).  Further, because reasonable jurists would not debate this Court's assessment of Bussell's constitutional claims, the Court declines to issue a certificate of appealability.  *See* 28 U.S.C. § 2253(c)(2) (providing that a certificate of appealability may issue "only if the [petitioner] has made a substantial showing of the denial of a constitutional right"); *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003) ("A petitioner satisfies this standard by demonstrating that jurists of reason could

disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further.").

**IT IS THEREFORE ORDERED** that:

1. the Clerk of Court shall note on the record the substitution of Steven Harpe in place of Mark Bowen as party respondent;

2.  the petition for writ of habeas corpus (Dkt. 2) is **denied**;

3. a certificate of appealability is **denied**; and

4. a separate judgment shall be entered in this matter.

**DATED** this 1st day of September, 2023.

TERENCE C. KERN
United States District Judge